1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9   DAVID L MAY,

10                    Plaintiff,

11          v.

12   JOHN D SNAZA, SERGEANT
     NOBLE,

13                    Defendants.

14

CASE NO. C14-5695 RBL-KLS

REPORT AND RECOMMENDATION
**NOTED FOR:  OCTOBER 24, 2014**

15        On September 2, 2014, Plaintiff David L. May filed a prisoner form application to

16   proceed in forma pauperis (IFP) and a proposed complaint.  Dkt. 1.  He also filed a proposed

17   "supplemental complaint and preliminary injunction."  Dkt. 2.  Mr. May was not incarcerated at

18   the time he filed his pleadings.  On September 9, 2014, the Court directed Mr. May to complete

19   and return the appropriate IFP form for non-prisoners.  Dkt. 4.  On September 18, 2014, Mr. May

20   returned the form but failed to complete questions 2, 3a-c, and 3 e-g.  Dkt. 5.  The Clerk returned

21   the form to Mr. May with instructions for completion.  To date, Mr. May has not responded.

22        The undersigned recommends that Mr. May's IFP application be denied and this action

23   dismissed without prejudice.  In addition, the Court's review of Mr. May's pleadings reveals that

24   they are legally deficient and fail to state a claim under 42 U.S.C. Section 1983.

1

**BACKGROUND**

2      Mr. May alleges that on June 12, 2014 he was sentenced to serve six months work release

3 and 365 days of community custody.  However, Sergeant Muldrew told Mr. May that he could

4 not be placed on work release while he was receiving disability benefits.  On May 9, 2014,

5 Deputy Sheriff Monroe told Mr. May that a prisoner must have a job or be able to be placed in

6 the work release program.  On May 28, 2014, Deputy Sheriff Shields told Mr. May that he must

7 move over to Post 5 Trustee Unit and work in the kitchen, laundry, or on the unit as a pod

8 orderly before he could work on building his resume and learn interview techniques.  On July 2,

9 2014, Mr. May was transferred to the Lewis County Jail due to overcrowding at the Thurston

10 County Jail.

11      Mr. May claims that he was denied equal protection because Defendants intentionally

12 denied him access to the work release program based on his disability in violation of Title II of

13 the Americans with Disabilities Act (ADA).  It also appears that Mr. May is claiming a lack of

14 due process because no steps were taken by Defendants to determine if in fact he was capable of

15 performing work.  Mr. May states that when he is not incarcerated, he receives approximately

16 $700 per month in disability benefits.

17      In an entirely different claim, Mr. May claims that Sheriff Snaza violated his First

18 Amendment religious rights when he was denied "reasonable access to Jumuah Prayer, an

19 Islamic leader, Islamic literature, and Islamic meals" during Ramadan, while he was confined at

20 the Lewis County Jail.  Mr. May claims that his transfer to the Lewis County Jail from the

21 Thurston County Jail violated his First Amendment right to free exercise of religion because

22 after the transfer he was not fed before sunrise or after sunset as required during Ramadan.

23      Mr. May claims that his transfer to the Lewis County Jail also interfered with his rights to

24 counsel and to access the courts.  Mr. May states that when he was arrested in January 2014 for

1    failure to register as a sex offender, his court appointed attorney on that case at sentencing failed

2    to address credit for time served – according to Mr. May, Sheriff Snaza gave him credit for time

3    served only beginning in May 7, 2014 which set his release date at September 3, 2014.  Mr.

4    May's access to his court appointed counsel terminated when his criminal case ended.  He claims

5    that because of his transfer to the Lewis County Jail, he cannot obtain counsel and he has been

6    greatly limited in his ability to litigate the case.

7         In a separate document which is largely illegible, Mr. May seeks "an injunction so that

8    future jail and prison inmates" are allowed to go to the work release, are not deprived of Islamic

9    religious freedoms, and can obtain an attorney.  Dkt. 1-2.

10        In a "supplement" to his complaint, Mr. May states that his "personal property was either

11   lost or stolen by the Defendants or their agents after it was taken to the Thurston County Jail by

12   Mr. Eric Pilon (his defense counsel) while he was in the Lewis County Jail."  Dkt. 2.

13        Mr. May is not incarcerated.  He signed his proposed complaint on September 1, 2014

14   and his address on the Court's docket is reflected as 900 Jefferson, General Delivery, in

15   Olympia, Washington.

16                                          **DISCUSSION**

17   **A.    IFP Application**

18        A district court may permit indigent litigants to proceed in forma pauperis upon

19   completion of a proper affidavit of indigency.  See 28 U.S.C. §1915(a).  However, the court has

20   broad discretion in denying an application to proceed in forma pauperis.  *Weller v. Dickson*, 314

21   F.2d 598 (9th Cir. 1963), *cert. denied*, 375 U.S. 845 (1963).

22        Because Mr. May has failed to comply with this Court's directives to pay the filing fee or

23   submit a properly completed IFP application, this case should be dismissed without prejudice.

24

REPORT AND RECOMMENDATION  - 3

**B.      Sufficiency of Legal Claims**

      **1.      Short and Plain Statement of Claims**

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562–563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*citing Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Mr. May's complaint does not comply with Rule 8.  The complaint is disorganized and difficult to follow.  Exhibits are randomly inserted between the pages of the complaint, and factual allegations begin at paragraph 8 (although reference is made to paragraphs 1 through 19).  The document attached as a "proposed motion for permanent injunction and brief" is almost completely illegible.  In many instances, Mr. May's allegations are confusing and conclusory, and he fails to allege facts from which it may be inferred that it is the named defendants who allegedly violated his constitutional rights.  The Court cannot reasonably discharge its screening responsibility under § 1915A until Mr. May complies with the pleading requirements set forth in Rule 8.  Therefore, if Mr. May chooses to pursue a lawsuit, assuming he has either submitted a complete IFP application and/or pays the filing fee, he must list his factual allegations according to the claims that he is asserting rather than lumping all of his factual allegations together in simple chronological order regardless of their relation to a particular claim.  Mr. May must include more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-557, 127 S.Ct. 1955, 167 L.Ed. 929 (2007).   He must plead facts sufficient to show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, (2) the name(s) of the person(s) who violated the right; (3) exactly what that person(s) did or failed to do; (4) how

1   the action or inaction of that person(s) is connected to the violation of the constitutional rights

2   asserted; and (5) what specific injury was suffered because of that person's conduct.  See *Rizzo v.*

3   *Goode*, 423 U.S. 362, 371–72 (1976).

4       **2.     Supervisory Liability**

5       Section 1983 supervisory liability cannot be based on respondeat superior.  *See Monell v.*

6   *New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  A § 1983 action may not be

7   brought against a supervisor on a theory that the supervisor is liable for the acts of his or her

8   subordinates.  See *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).   Thus, and to the extent

9   that any of Mr. May's allegations against Thurston County Sheriff Snaza and Sergeant Noble are

10  premised solely on the responsibility of those individuals to supervise sheriff's department

11  and/or jail employees alone, such allegations are insufficient to state a § 1983.  To state a claim

12  against any individual defendant, a plaintiff must allege facts showing that the individual

13  defendant participated in or directed the alleged violation, or knew of the violation and failed to

14  act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied*, 525

15  U.S. 1154 (1999).  Because vicarious liability is inapplicable to a § 1983 suit, a plaintiff must

16  plead that each Government-official defendant, through the official's own individual actions, has

17  violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d

18  868 (2009).   Conclusory allegations that a defendant or a group of defendants have violated a

19  constitutional right are not acceptable and will be dismissed.

20      **3.     Exhaustion**

21      42 U.S.C. § 1997e(a) provides, in relevant part, that "[n]o action shall be brought with

22  respect to prison conditions under section 1983 of this title, or any other Federal law, by a

23  prisoner confined in any jail, prison, or other correctional facility until such administrative

24  remedies as are available are exhausted."

Mr. May states that he "sought to exhaust his administrative remedies as required by Thurston County policy but both Defendants refused to agree with [his] claim." Dkt. 1-1, p. 3. He also states that he was then transferred to another facility.  Mr. May apparently believes that a rejection of a request and/or his transfer to another facility relieved him of his obligation to exhaust his administrative remedies.  However, the exhaustion requirement is not rendered inapplicable due to a prisoner's transfer to another correctional facility.  *See, e.g., Medina Claudio v. Rodriguez–Mateo*, 292 F.3d 31, 35 (1st Cir.2002); *Flourney v. Navarro*, 2008 WL 4184650 at *7 (C.D.Cal.200*) (transfer from Los Angeles County Jail to California Department of Corrections does not exempt Plaintiff from exhaustion requirement prior to bringing suit for jail incident.)  The PLRA clearly requires all confined individuals to exhaust available remedies prior to bringing a lawsuit relating to prison conditions. A transfer to another facility, even if under the control of a different official, does not make the grievance procedure unavailable.  *Id*. Moreover, "there is no 'futility exception' to the PLRA exhaustion requirement." *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir.2000); *see also Booth v. Churner*, 532 U.S. 731, 741 (2000) (PLRA mandates exhaustion regardless of the relief offered through administrative procedures).

### 4.        ADA – Work Release

Title II of the Americans with Disabilities Act (ADA), provides in relevant part:

> . . . [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  To prove a violation of Title II of the ADA, a plaintiff must show:

> (1) [H]e is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public

entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *citing Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Mr. May alleges that he is disabled and documents attached to his complaint reflect that he receives disability benefits from the Social Security Administration (SSA).  However, in his complaint, he alleges that he was denied access to a work release program because he would receive SSA disability benefits.  In other words, he receives these benefits because he is unable to work.  Mr. May contends, however, that Defendants should have provided him with a physical to determine if he could go into the work release program.

First, Mr. May's claim is somewhat conflicting – he is disabled and receives disability income because he is unable to work, but he seeks to hold Defendants liable for not making an independent determination of his ability to work.  Second, Mr. May contends that he has a liberty interest in the work release program and that Defendants denied him that liberty interest without due process of law.  However, Mr. May has no liberty interest in transfer to community custody. *Carver v. Lehman,* 558 F.3d 869, 875 (9th Cir.2009) (Washington law does not create a liberty interest in transfer to community custody for sex offenders); *see also Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 7 (1979) (convicted prisoners have no due process liberty interest in early release arising from the Constitution).  In *Carver v. Lehman*, 558 F.3d 869, 873 (9th Cir.2009) the Ninth Circuit held that a sex offender who earned early release time for good behavior "is not entitled to early release; rather he is eligible for a discretionary transfer into community custody if his proposed placement is appropriate."  In *In re Mattson*, 166 Wash.2d 730, 739, 214 P.3d 141 (2009), the Washington State Supreme Court reached the same result, holding that RCW § 9.94A.728 "gives DOC wide latitude" in determining whether an individual

1    "may" be released before his sentence expires.  Both courts expressly rejected the theory that

2    RCW § 9.94A.728 creates any liberty interest in early release, and emphasized that the DOC has

3    generous discretion in this decision.  *Mattson*, 166 Wash.2d at 740, 214 P.3d 141; Carver, 55

4    F.3d at 876.

5            Additionally, Mr. May contends that he was not allowed to participate in a re-entry

6    program until he was moved to Post 5 Trustee Unit.  However, Mr. May fails to allege how this

7    violated any constitutional right.

8            **5.      Calculation of Time Served**

9            Mr. May asserts what appears to be a separate claim that counsel in his criminal case

10   failed to ensure that Mr. May was given credit for time served when he was sentenced.

11   Apparently, Mr. May is presently addressing this issue in Thurston County Superior Court and

12   with his counsel.  Dkt. 1-1, p. 12.  Attachments to his complaint indicate that his release date was

13   set at September 4, 2014 and that he was released on August 22, 2014.  It is unclear what Mr.

14   May is asserting and what relief he seeks.

15          **6.      First Amendment – Religion**

16          Mr. May contends that after he was transferred to Lewis County Jail, he was not provided

17   with before sunrise and after sunset meals required during Ramadan fasting from June 28, 2014

18   to July 27, 2014 and that thereafter, it took about two weeks before he was placed back on a

19   vegetarian diet.  Mr. May also seeks to hold Sheriff Snaza liable for the lack of access to Jumuah

20   Prayer, an Islamic leader, Islamic literature, and Islamic meals at the Lewis County Jail.

21          In order to implicate the Free Exercise Clause, the inmate's belief must be religious in

22   nature and sincerely held.  See *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir. 1994) (internal

23   quotations and citation omitted); *Shakur v. Schriro,* 514 F.3d 878, 884-85 (9th Cir. 2008)

24   (adopting the "sincerity test" set forth in *Malik, supra*).  Inmates with such beliefs have "[t]he

1  right to exercise [their] religious practices and beliefs...." *McElyea v. Babbitt,* 833 F.2d 196, 197

2  (9th Cir. 1987) (per curiam) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).  A

3  free exercise violation occurs when the defendants burden the practice of an inmate's religion by

4  preventing the inmate from engaging in sincere religious conduct.  See *Freeman v. Arpaio,* 125

5  F.3d 732, 736 (9th Cir. 1997), *overruled in part by Shakur,* 514 F.3d at 885.  A mere

6  inconvenience does not give rise to a violation; the burden imposed must be substantial.

7  *Freeman,* 125 F.3d at 737.

8      **7.    Access to Courts**

9      Mr. May contends that his transfer to the Lewis County Jail deprived him of the ability to

10  obtain counsel and to pursue his efforts to have his sentencing court take time already served into

11  consideration.  To prevail on such a claim, however, Mr. May must allege facts explaining how

12  he was denied access, who denied him access, and how this denial injured him.

13      Inmates have a fundamental constitutional right of access to the courts and prison

14  officials may not actively interfere with Plaintiff's right to litigate.  *Lewis v. Casey*, 518 U.S. 343,

15  346 (1996); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir.2009).  Courts have traditionally

16  differentiated between two types of access claims, those involving the right to affirmative

17  assistance, and those involving inmate's right to litigate without active interference.  *Silva v. Di*

18  *Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011).

19      The right to assistance is limited to direct criminal appeals, habeas petitions, and civil

20  rights actions.  *Lewis*, 518 U.S. at 354 (emphasis added).   Prisoners also have the right to pursue

21  claims, without active interference, that have a reasonable basis in law or fact.  *Silva*, 658 F.3d at

22  1103–04 (finding that repeatedly transferring the plaintiff to different prisons and seizing and

23  withholding all of his legal files constituted active interference).  This right forbids state actors

24

1    from erecting barriers that impede the right of access to the courts of incarcerated persons. *Silva*,

2    658 F.3d at 1102 (internal quotations omitted).

3          Defendants' actions must have been the proximate cause of actual prejudice to the

4    plaintiff. *Silva*, 658 F.3d at 1103–04. To state a viable claim for relief, a plaintiff must show

5    that he suffered an actual injury, which requires "actual prejudice to contemplated or existing

6    litigation" by being shut out of court. *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018

7    (9th Cir.2011) (citing *Lewis*, 518 U.S. at 348, 351); *Christopher v. Harbury*, 536 U.S. 403, 415,

8    122 S.Ct. 2179, 153 L.Ed.2d 413 (2002); *Phillips v. Hurst*, 588 F.3d 652, 655 (9th Cir. 2009).

9          **8.    Personal Property**

10         In a "Supplemental to Civil Rights Complaint and Motion for Injunctive Relief," Mr.

11   May claims that his personal property was either lost or stolen by Defendants while he was in the

12   Lewis County Jail.

13         The Fourteenth Amendment provides, "[n]o State shall ... deprive any person of life,

14   liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The

15   Constitution's due process guarantee generally "requires some kind of hearing before the State

16   deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

17   However, when a prisoner alleges an intentional or negligent deprivation of his property by an

18   unauthorized action of a prison official, there is no violation of procedural due process if the

19   state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 468

20   (1984) (intentional deprivations of property); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)

21   (negligent deprivations of property). This is because "when deprivations of property are effected

22   through random and unauthorized conduct of a state employee, pre-deprivation procedures are

23   simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*,

24   468 U.S. at 533. On the other hand, when the deprivation occurs pursuant to "state law,

regulation, or institutionalized practice, it is neither random nor unauthorized, but wholly

predictable, authorized, and within the power of the state to control," and the justifications for

post-deprivation remedies does not apply and the normal pre-deprivation hearing is required to

satisfy due process. *Haygood v. Younger*, 769 F.2d 1350,1357 (9th Cir.1985) ( en banc ), cert.

denied, 478 U.S. 1020 (1986) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436

(1982)); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 737–38 (9th Cir.2001).

Under Washington law, Mr. May is able to file a tort claim and a civil action against the

state of Washington for the unlawful loss or destruction of his personal property.  RCW

72.02.045 (state and/or state officials liable for the negligent or intentional loss of inmate

property); RCW 4.92.090.-.100 (state liable for the tortious conduct of state officials and

employees); *see also Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. WA 1986) (state of

Washington provides a meaningful remedy for the loss of an inmate's property by state

officials).  Because the state of Washington provides a meaningful remedy for the loss of his

personal property, Mr. May has no federal due process rights in his personal property.

**9.    Preliminary Injunction**

As noted above, Mr. May is no longer incarcerated but seeks injunctive relief against jail

personnel on behalf of other unidentified prisoners.

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded

as of right.  *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 2219 (2008) (citations and

quotation omitted).  Instead, the instant motion requires the court to "balance the competing

claims of injury and ... the effect of the granting or withholding of the requested relief."  *Winter*

*v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008) (quoting *Amoco Prod. Co.*

*v. Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396 (1987)).  A plaintiff seeking a preliminary

injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood

1   of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships

2   favoring the plaintiff, and (4) advancement of the public interest. *Id.* (citations omitted).   This is

3   an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

4   entitled to such relief." *Id*. at 376.   Moreover, a plaintiff must show more than a mere

5   "possibility" of irreparable harm, but instead must "demonstrate that irreparable injury is likely

6   in the absence of an injunction." *Id*. at 375 (emphasis and citations omitted).

7           This Court cannot issue an order against individuals who are not parties to a suit pending

8   before it. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100 (1969).   In addition,

9   injunctive relief is to be used to address issues related to the underlying violations presented in

10  the complaint. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.1994) (plaintiff seeking

11  injunctive relief must show "[a] relationship between the injury claimed in the party's motion

12  and the conduct asserted in the complaint."); *see Little v. Jones*, 607 F.3d 1245, 1250–51 (10th

13  Cir .2010) (motion defined as insufficiently related to conduct addressed in complaint); *Colvin v.*

14  *Caruso*, 605 F.3d 282, 299–300 (6th Cir.2010) (no preliminary injunction where motion for

15  relief based on facts and circumstances entirely different from initial claim); *Omega World*

16  *Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir.1997) (same).   It is important that

17  the movant establish the relationship between the injury claimed in his motion and the conduct

18  asserted in the complaint because "[t]he purpose of interim equitable relief is to protect the

19  movant, during the pendency of the action, from being harmed or further harmed in the manner

20  in which the movant contends [he] was or will be harmed through the illegality alleged in the

21  complaint." *Omega*, 111 F.3d at 16.

22                                      **CONCLUSION**

23          Mr. May has not submitted a properly completed IFP application nor has he paid the

24  $400.00 filing fee although he was given instructions and ample opportunity to do so.   In

REPORT AND RECOMMENDATION  - 12

1   addition, his complaint is deficient and fails to state a claim under 42 U.S.C. § 1983.  Although

2   the Court would normally grant leave for Mr. May to file an amended complaint, this case cannot

3   proceed until he is granted IFP or has paid the filing fee.  Therefore, the Court recommends that

4   this case be dismissed without prejudice to refiling.

5           The IFP application should be denied and this case dismissed without prejudice.

6   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the

7   parties shall have fourteen (14) days from service of this Report to file written objections.  See

8   also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

9   purposes of appeal.  *Thomas v Arn*, 474 U.S. 140 (1985).  Accommodating the time limit

10  imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 24,**

11  **2014**, as noted in the caption.

12          **DATED** this  8th  day of October, 2014.

13

14                                              Karen L. Strombom
                                                United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION  - 13